King, J.
Plaintiff in error asks us to reverse the judgment of the ■court of common pleas affirming a judgment rendered by the probate court of this county, in proceedings that were instituted before that court under an act of the legislature' first passed March 20th, 1889, and subsequently amended somewhat. That statute has been the subject of some contention in one or two counties in the circuit, and other cases are now pending; therefore we have carefully considered this case. This statute is supplemental to a chapter of the Revised Statutes relating to ditch proceedings, and its provisions are intended to enable one county to improve or enlarge a ditch,or to construct it originally, and to provide for an increase of the water from an upper county, which increase of drainage is due to improvements in the drainage of the upper county, increasing the flow of water down upon the lower county. The statide was passed in 1889, and in 1893 the first, third and tenth sections of it were amended, and in 1894 the first, second, fourth and tenth sections were amended.
In this case a petition was filed before the probate judge, as provided by the statute, and the statement made that .proceedings were pending before the county commissioners of Lucas county, for the improvement of a ditch — and also a natural water-course — known as ten-mile creek; and that the commissioners of Lucas county had been unable to *565 agree with the commissioners of Fulton county. There was a hearing had by the probate court, and the statute now in force seems to authorize a hearing at that time, although the language is not altogether clear. Sec. 2, as now in force, provides that on failure to agree as to the amount, or upon failure to pay the amount agreed upon, the commissioners of the lower county shall commence a proceeding in the probate court of either county, setting forth that such proceedings have been begun for the making of such improvement, and the reasons why the commissioners of the upper county should pay to the commissioners of the lower county a compensation for such outlet or proposed outlet, and the failure to agree or pay, as provided in the preceding section, and praying for the relief thereinafter provided for; that the probate court shall issue a summons directed to the sheriff of the upper county, commanding him to notify he commissioners of the upper county that such an action has been commenced. The summons shall contain a copy of the petition, and name the time and place of hearing, and be served and returned as in other cases, and such service shall be no less than ten days before the date of the hearing. That is all that is said about a hearing, and it would seem to contemplate that there may be a hearing at the date named in the summons. Sec. 3, of the act passed March 14th, 1893- — us now in force (Vol. 90, page 82) — provides, without saying anything further about a hearing;
“The court being satisfied of the existence of proceedings for any such improvement, and the failure to agree or pay as aforesaid, shall appoint two disinterested freeholders not residents or owners of real property of either of said counties — ’’
„ And then the section proceeds to say that the judge shall immediately notify the probate court of the other county of his action, and that the said probate judge shall in like manner appoint two other freeholders, also not residents or *566 owners of real property in either county, and notify the judge of probate of the lower county of his action, and give him the names and postoffice address of the two appointees.
From this we think it was proper to have a hearing upon the return-day named by the summons, and such hearing should have been (as it was in this case,) confined to the two questions: First, Whether there were pending before the commissioners of that county proceedings for the improvement of the water-course described? And, second, That the commissioners of the lower county and the commissioners of the upper county had failed to agree upon compensation; or that having agreed, the commissioners of the upper county had failed to pay the amount agreed upon. Those two facts, it may be said, are jurisdictional ones to be found by the court in which this proceeding is pending before they shall appoint the freeholders named by the statute. These are the only two questions to be considered by the court, and the only ones to be passed upon by it. The court in this case found the existence of these two things: The pendency of the proceedings, and the failure to agree. Objection is taken to that upon the claim that no proper proof was submitted of that fact. The court can dispose of this objection by saying that the proof was the record of the county commissioners showing the filing of the petition and the action taken before the county commissioners looking to the improvement of this ditch in the manner described. And as to the failure to agree, it was admitted by the commissioners of the upper county that they had failed to agree at one time in these proceedings, so that the action of the probate court in the appointment of these freeholders was entirely correct.” The probate court having appointed these commissioners, notified them and no* tified the probate judge of the upper county, who also appointed two; and thereupon the probate judge of Lucas county, on April 14th, entered an order upon his journal, *567 which I may say he intended to do pursuant to Sec. 3, to which I have already referred. This section goes on to provide that after he shall have given these notices and made these appointments, the court “shall, within ten days thereafter, notify said four persons thus appointed, giving them full and explicit instructions and the time and place of meeting, who shall, within thirty days thereafter, upon actual view of the outlet ditch, or of the territory to be drained by any such proposed improvement, and of the ditch or ditches in the upper county and of the land to be drained in the upper county whose waters flow into said outlet, and which will flow into any such proposed outlet or proposed improvement thereof, estimate and report to the court the amount which should justly be paid by said upper county to said lower county for the use and benefit of said outlet ditch, or for any improvement thereof, which order of appointment, together with full and explicit instructions to said appointees, shall be entered on the journal of said court, and a copy thereof sent forthwith by the clerk to each of said appointees.”
The probate court, on April 4th, entered upon its journal (and the record shows that it was sent to each of these four appointees) an order which purports to be instructions to this committee as to their duties, and also instructing them additionally that they are to meet at the office on a certain day and there receive an oath to be administered by the court. Whether that was necessary or not, I need not now say. That seems to have been sent to each member of this committee, and we think that that was a proper method to pursue under this statute. Subsequently it appeared, at a time when the court directed these men to appear at his office, that one of them would not serve — one appointed by the probate judge of Fulton county- — -and thereupon he had to be dismissed by the probate judge and another one notified, and the next time they appeared, it appears by the *568 record that they were instructed both orally and in writing, and the instructions were reduced to writing and entered upon the journal; and it is presumed (although the record does not show it) that a copy was given to each of the members of the committee.
We think the statute clearly intends that the probato judge may give these notifications by mail; that it is unnecessary for him to have the committee at his office for the purpose of notifying them — and therefore we think that so much of the record there as shows that counsel for the upper county appeared and presented requests to be given as instructions to this committee, and excepted to the refusal of the probate judge to give them, was all irregular, so that the probate judge might have entirely ignored the presence of counsel for the upper county and any of his requests to’ instruct these freeholders, for the statute clearly contemplates that the instructions shall be given in writing, and provides that a copy shall be sent to each of the freeholders, and with the giving of these instructions, counsel for the upper county have nothing to do until the committee shall have made its report. After these instructions are entered upon the record, we have no doubt but that they may be objected to, but they must be objected to upon the making of the report; and this may cover the instructians given by the probate judge to the committee as well as any other proceedings which have occurred since the first hearing. We think that any argument that is made here in favor of sustaining the exceptions to the instructions of the probate judge to the committee is not well taken.
We do not think the court erred, to the prejudice of the upper county, in its action on that subject. Going further, we think the instructions to the jury were plain, full, and explicit, as required by the statute; and even instructions much less explicit might well have been sustained. The only language of the statute requiring in-. *569 structions is, that the judge shall give full and explicit instructions.
The next question presented to us is, as to the decision of the probate judge upon the exceptions filed to the report of the committee. The statute provides: — ■
Sec.3,“if said board of freeholders shall not be able to agree upon the amount to be paid by said upper county to said lower county, then they shall call to their assistance one other freeholder, who shall not be a resident or owner of real property of either of said counties, and the said five freeholders shall forthwith proceed to determine the amount of damages the said upper county shall pay to the said lower county, and report the same as herein provided.”
This committee not being able to agree, called in a fifth man, and he had some further instructions,but there was no agreement, except that three agreed and the other two dissented. The three agreed to a sum of $450.00 — or thereabouts; the two felt that it should be very much higher. Thereupon a majority and a minority report was filed, and the commissioners of Lucas county excepted to the majority report. These exceptions were set for hearing under the provisions of the statute found in Vol. 91, page 262, Sec. 4:
“Either of the parties to said action may,within ten days after the filing of said report, file exceptions thereto, which exceptions the court shall hear and determine, and shall confirm, modify or set aside said report, as justice may require; and, if the same be set aside, other freeholders shall be appointed as provided in Sec. 3 of said act, who shall estimate and report as provided in said section, and the decision of the court upon such report shall be final, unless the same shall be reversed upon proceedings in error for errors of law occurring upon such hearing, or because the determination of the court upon exceptions thereto is against the weight of the evidence ”
Upon the hearing of the exceptions filed by* the commissioners of Lucas Co., a large amount of ["'evidence was heard, and on summing up, the probate court held that it had *570 jurisdiction to modify this report, and that in pursuance of the evidence it was bis duty to, and he did modify it by increasing it to the sum of $2,400; and, so increased, the court confirmed the report and entered it up as a judgment against the commissioners of Fulton county. Now it is argued here very strenuously and ably that the court had no jurisdiction under this statute to disturb this amount, except to set it aside and appoint a new committee of freeholders, and send them out to exercise their judgment about it; and it is also claimed that the judgment of the probate court is not sustained by the evidence. I have read section 4, and we think a fair construction of that section is, • that either party may file ■exceptions, both as to the rulings of the court previously made, and as to the report of the committee — and then these ■exceptions may be heard upon the evidence, because the statute expressly provides that the decision of the judge upon those exceptions may be reviewed upon the ground that the decisions are against the weight of the evidence as well as against the law; and that the court shall confirm, modify or set aside said report, as justice may require. The statute reads, in a continuous sentence, that if he sets aside the report, he shall appoint other freeholders, as provided in section three, who shall estimate and report as provided in said section, and. the decision of the court upon such report shall be final, unless the same shall be reversed, etc. It is argued that the court is really bound to set aside the report, if it disagrees with it or-finds the exceptions true in any respect, and to send out a second committee, and that its power to appoint committees is exhausted with ■the second appointment,and that his decision confirming or' modifying the second report is final, unless either party shall carry the case to a higher court to review it upon errors of law or because the decision is not sustained by the evidence. This construction of the statute we cannot accept. *571 No report can be final if set aside, and any one is final if confirmed, whether modified or not, unless error is prosecuted. Now, in this case, the court saw fit to modify the report — not to confirm it as made, but to change the amount and increase it from $450 to $2,400. Had the court the power to do that? That question has been argued to some length, but it seems to us that these words must be given their plain and significant meaning — that the power given to modify may include the power to increase the amount as well as to decrease it; he may modify it as to its mere form, and he may modify it as to its substance. Webster says,. the general definition of “modify” is “to change the form, to shape, to vary;” and it was held in the 1 Cincinnati Superior Court Rep., 166, in reviewing a statute providing-that the court could modify a judgment at the term after which it was made, that the court might increase the judgment rendered at the previous term, and in that case, by adding to and taxing in the costs an attorney’s fee which had been omitted in the previous judgment; and it has been-held in other cases that under the power to modify a judgment, the amount of the judgment might be increased as well as decreased. We think these words are, perhaps, entitled to a broader meaning than the word “modify” in the code, because this proceeding is somewhat different from an ordinary action under the code in a court of record. This is a proceeding by the commissioners in pursuance of' the general policy of the ditch law, to secure the improvement of a ditch, and the first of the steps taken to secure that improvement is to send out a committee along the line of the proposed improvement in the territory that is going-to be affected and drained, and report from actual view— not from hearing evidence, but from viewing the property- - — what, in their judgment, should be paid by the upper-county to the lower. They come in and make that report.. Then the statute clearly gives the court the right to- review" *572 that report upon the evidence of witnesses, examined and cross-examined in open court. It clearly gives the probate court the right to confirm it or to set it aside, Now, take this case: The probate judge, who seems to have understood this statute, heard the witnesses called by both parties, comprising many of the principal farmers who reside upon the line of this improvement in both counties, and civil engineers from both counties who had lived there many years and had been over this territory many times, and these witnesses give actual data and figures upon which the probate court might act intelligently, and it seems clear that the probate judge is invested, and should be invested with the right to modify such a report as this, and that he is in a great deal better position to fix an equitable amount to be paid by this upper county to the lower county than this committee or any committees that might be appointed could ever be, and we think his action in modifying this report by increasing it cannot be set aside in this court upon the ground that he had no power under the law; but if the probate judge shall, in his decision, act from any wrongful prejudice, or because of any local preference, to secure more from the other county than would be its due proportion, the rights of the parties are to be preserved by a review of that judgment in a higher court upon the evidence set forth, and the court, under such circumstances, will carefully inspect every case where the evidence is set forth to determine whether the probate judge has acted fairly and justly. It might happen that the probate judge would be influenced by a pressure of public opinion, or otherwise, to make the amount smaller for his own county, or larger for the adjoining county, than the evidence fairly disclosed. We have been over this evidence, and have fully and carefully reviewed the finding of the probate court shown in the record, and the court seems to have given to this evidence very full and careful consideration. He reviews the testi *573 mony and gives the substance of it much more fully than I will, and it looks to us as though he gave it a fair construction. The evidence conclusively shows certain facts; that the territory actually drained by this ditch in Lucas county was a little more than 25,000 acres, and that from two to perhaps six sections in the state of Michigan were drained by it — about 1,300 acres, I think, as given by the lowest estimate, and about 3,700 to 3,800 acres as given by the highest estimate — and that the territory drained in Fulton county was about 21,700 acres.. The conclusion of the probate judge was that there were^about 29.000 acres drained in Lucas county and Michigan, and about 21,000 acres in Fulton county, and averaging that, in round numbers, he said that about four-tenths of the territory was in Fulton county and about six-tenths in Lucas county and Michigan. In that estimate we do not think the judge made any finding to the prejudice of Fulton county, as this would make about 20,000 acres in Fulton county and 30,000 outside. He found, from a review of the testimony of the witnesses, that the supply of water coming out of Fulton county had just about doubled from thelartificial drainage. Two or three witnesses called from Fulton^county testified to that proportion. The probate judge was well supported in that finding, we think, by the testimony of witnesses called by the defendant below. The quantity that this ditch would have to provide for would be about twice as much as it would be in a state of nature. This being correct, the upper county would be entitled to the natural drainage — as it was in a state of nature; but the supply of water had been considerably increased by the artificial drainage; that is, the supply for a considerable ■length of time had been increased, and the capacity of the outlet would have to be increased proportionately; and, upon that subject, the probate judge found that a fair proportion of the expense of improving this ouilet to be charged *574 to Fulton county would be two-tenths. Upon the subject of the cost of the improvement, he followed more especially the testimony of the engineers of this county, and found that it would be about $12,000, and two-tenths of that would be $2,400, which, we think, was a fair finding, and such as the statute required him to make when it provided that he might modify this judgment as justice might require.
W. W. Touvelle and Doyle c& Lewis, for Plaintiff in, Error.
J\ A. Barber, for Defendant in Error.
'We will affirm the judgment of the common pleas affirming the judgment of the probate court.